# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

---

| | |
|---|---|
| RENITA M. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. |
| v. | ) |
| | ) |
| EASTPOINTE COMMUNITY SCHOOLS AND CHRISTINA GIBSON, INDIVIDUALLY, | ) Honorable |
| | ) |
| | ) **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendants. | ) |
| | ) |
| | ) |

---

Jeffrey C. Hart (P69217)
Charissa Huang (P75501)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiff
213 S. Ashley Street, Suite 400
Ann Arbor, MI  48104
(248) 417-7829 / (734) 436-0030 (fax)
jhart@shrr.com
chuang@shrr.com

---

## **COMPLAINT**

Plaintiff, Renita M. Williams ("Plaintiff"), brings this action against Defendants Eastpointe Community Schools ("the School District") and

Christina Gibson ("Defendant Gibson"), collectively ("Defendants") as follows:

## NATURE OF THE CLAIMS

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including its discriminatory treatment against Plaintiff due to her race in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 (Section 1983), and the Elliott Larsen Civil Rights Act of 1976, MCL § 37.2101.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding deprivation of Plaintiff's rights under 42 U.S.C. § 1981 (Section 1981), 42 U.S.C § 1983 (Section 1983) and the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-36, 134 Sat. 281 (2020) (CARES ACT). The court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3. The amount in controversy exceeds $5,000,000.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful contract dealings and employment practices alleged herein, occurred in the district.

## THE PARTIES

5. Plaintiff, Renita M. Williams, was an assistant principal of the Eastpointe High School, and at all relevant times has been a resident of the State of Michigan and resides in Eastpointe, Michigan and met the definition of an "employee" under all applicable statutes.

6. Defendant, Eastpointe Community Schools, is a school district located in Macomb County, City of Eastpointe, Michigan. At all relevant times Eastpointe Community Schools met the definition of "employer" under all applicable statutes.

7. Defendant, Christina Gibson, is the superintendent of Eastpointe Community Schools and upon knowledge and belief Defendant Gibson is a resident of Macomb County, State of Michigan and works at the Eastpointe Community Schools Central Office in the City of Eastpointe, Michigan.

## FACTUAL ALLEGATIONS

8. Plaintiff is a Black Female.

9. Plaintiff began her work for Eastpointe Community Schools in 2016. During the time that Plaintiff worked for Eastpointe Community Schools, from 2016 to 2021, she was one of only three Black administrators.

10. Plaintiff was employed as an Assistant Principal of Eastpointe High School for the 2020/2021 school year.

11. Plaintiff was also the Interim Principal at Eastpointe High School and an Assistant Principal at Kelly Middle School.

12. Plaintiff has a master's degree in education and has been an educator for more than 17-years.

13. The Central Office of Eastpointe Community Schools is all white and the student population of Eastpointe Community Schools is approximately 90% black.

14. In 2020/2021, Defendant Eastpointe Community Schools provided a COVID-19 related Elementary and Secondary School Emergency Relief Fund grant (ESSER grant) derived from Federal Funds from the CARES ACT to all WHITE administrators but failed to

provide the same grant or "bonus" to **any** BLACK administrators including Plaintiff.

15. The nature of the ESSER grant bonus was akin to hazard pay for the administrators and teachers who were required to attend school and interact with students in person in some fashion, be it in the schools or meeting students during the 2020/2021 school year while the COVID-19 virus was virulent and thought to be life threatening.

16. Defendants did in fact discriminate against Plaintiff with full knowledge and discriminatory intent and animus by providing the ESSER grant to WHITE administrators but failing to provide the same grant to BLACK administrators which included the Plaintiff.

17. Defendants custom and or policy in declining to include BLACK administrators displayed a pattern of racism by the Defendants.

## COUNT I

### Race Discrimination Pursuant to 42 U.S.C. §1981 (Section 1981)

18. Plaintiff realleges paragraphs 1 through 15 as if fully stated herein and adopts by reference each preceding paragraph.

19. U.S.C. §1981 prohibits discrimination based on race and color in the making and enforcement of contracts. Section 1981 specifically defines the term "make and enforce contracts" to include the enjoyment

5

of all benefits, privileges, terms, and conditions of the contractual relationship.

20. Plaintiff was a party to an employment contract with Defendant Eastpointe Community Schools and was, by law, to enjoy all benefits, privileges, terms, and conditions of working in the School District free from racial discrimination including being free from the discriminatory action to not provide BLACK administrators with the same contract benefits as provided to WHITE administrators.

21. Pursuant to Section 1981 such contract expectations and benefits included the right to work and be paid all benefits that similarly situated WHITE administrators enjoyed, to be free from a discriminatory work environment equivalent to what WHITE employees enjoyed such that Plaintiff's right to contract was not severely abridged and diluted because of her race.

22. As described in preceding paragraphs, Defendants' actions intended to discriminate and did discriminate against Plaintiff when Plaintiff did not receive an ESSER grant bonus where all WHITE administrators did receive same.

23. As a direct result of the racism alleged in the preceding paragraphs Plaintiff felt indignity, humiliation, shame, and embarrassment because of Defendants actions of not paying her the ESSER grant because of her race.

24. As a further direct result of the racism alleged in the preceding paragraphs, Plaintiff also sustained monetary damages including loss of earnings and loss of reputation and dishonor within the educational community.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor against Defendants for all compensatory damage, exemplary damages, punitive damages, penalties, treble damages, and equitable and injunctive relief, together with costs, interest, and attorney fees.

## COUNT II

**Race Discrimination, Retaliation, Hostile Work Environment, and Constructive Discharge Under 42 U.S.C. §1983 (Section 1983) and *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S. Ct. 2702 (1989)**

25. Plaintiff realleges paragraphs 1 through 24 as if fully stated herein and adopts by reference each preceding paragraph.

26. Section 1983 prohibits the deprivation of any rights, privileges, or immunities secured under the Constitution and laws of the

7

United States.

27. Plaintiff is a member of a protected class as a Black Female.

28. Based on the preceding paragraphs, Plaintiff was deprived of her rights to work in a racism free workplace and was deprived enjoyment of her employment contract pursuant to Section 1981.

29. Plaintiff was discriminated against, suffered inequality, retaliation, and a hostile work environment by Defendants.

30. Section 1983 is the exclusive remedy for violations of Section 1981 by individuals acting in their official capacity as state actors.

31. Defendants were acting in their official capacity as state actors.

32. Based on the preceding paragraphs, Defendants created a hostile work environment by failing to pay Plaintiff the ESSER grant bonus because she is BLACK and retaliated against Plaintiff, which led to her constructive discharge.

33. When Plaintiff learned she was not paid the ESSER grant bonus unlike all her white counterparts, Plaintiff felt indignity, humiliation, shame, and embarrassment because of Defendants actions she felt very little worth or value to the Eastpointe Community Schools

8

and that was the ultimate breaking point for her ability to continue to work in the racially charged environment, and blatantly discriminatory environment.

34. Plaintiff sustained a materially adverse change in her condition of employment.

35. Plaintiff sustained damages including monetary damages, loss of wages, humiliation, indignity, and embarrassment because of the discrimination set forth in the preceding paragraphs.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor against Defendants for all compensatory damage, exemplary damages, punitive damages, penalties, treble damages, and equitable and injunctive relief, to which the Court finds Plaintiff entitled, together with costs, interest, and attorney fees.

## COUNT III

### Race Discrimination, Retaliation, Hostile Work Environment, and Constructive Discharge Under Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq. (ELCRA)

36. Plaintiff realleges paragraphs 1 through 35 as if fully stated herein and adopts by reference each preceding paragraph.

9

37. Plaintiff is a Black Woman and belongs to a protected class within the framework of MCL §37.2101 et seq.

38. Under ELCRA, Defendants conduct as described in the preceding paragraphs had the purpose or effect of substantially interfering with Plaintiff's employment and created an intimidating, hostile, or offense employment environment.

39. After Plaintiff was not included in the ESSER grant bonus because of her race, she was forced to look elsewhere for work because of her feelings of indignity and of little worth to the Eastpointe Community Schools as evidenced by Defendants blatant racially discriminatory conduct.

40. Defendants' differing treatment of all WHITE administrators who were similarly situated to Plaintiff in all relevant respects, except for their race, gives rise to an inference of unlawful discrimination under the ELCRA.

41. After Plaintiff left the employment of Defendant Eastpointe Community Schools, superintendent Defendant Gibson, a WHITE woman, made it a mission to contact prospective employers and to "bad mouth" the Plaintiff.

42. Defendant Gibson's conduct was motivated by racial animus.

43. Defendant Gibson's conduct was done in retaliation to Plaintiff leaving Eastpointe when Plaintiff found out of the racially discriminatory conduct of Defendants failing to pay BLACK administrators the ESSER grant bonus where WHITE administrators were paid such bonus.

44. Defendant Gibson contacted no less than three prospective employers to "not recommend" or "bad mouth" Plaintiff.

45. Defendant Gibson used an app that many of school districts used for hiring and Defendant Gibson intentionally kept tabs on Plaintiff and once Plaintiff submitted an employment application to a school district Defendant Gibson felt compelled to intervene in the contractual relationship Plaintiff was attempting to obtain with new school district prospect.

46. It is known that Defendant Gibson intervened in Plaintiff's attempts to be hired at Farmington Community Schools, and River Rouge Public Schools and other school districts which will be further set out during discovery.

47. As described in the preceding paragraphs, Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult so severe and pervasive that these conditions of her employment created an abusive working environment and led to her constructive discharge.

48. Not only was Plaintiff constructively discharged, but after Plaintiff left Defendant Eastpointe Community Schools Plaintiff was retaliated against for leaving by Defendant Gibson as described in the preceding paragraphs.

49. Defendants' discrimination, creation of a hostile work environment, retaliation, and constructive discharge did cause Plaintiff damages including monetary damages and emotional damages including, but not limited to, emotional distress, humiliation, embarrassment, indignity, dishonor, and shame because of Defendants' racial discrimination.

50. As a direct result of Defendants conduct as described in preceding paragraphs, Plaintiff sustained damages and adverse employment action in the form of constructive discharge and in terms of

Plaintiff's ability to freely interview for a new position in other districts without racial animus from her former employer.

51.     Plaintiff was also damaged by Defendants' conduct by the loss of equal ESSER grant bonus monies, loss of her employment and by experiencing public humiliation, embarrassment, emotional distress, and damage to her reputation.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor against Defendants for all compensatory damages, exemplary damages, punitive damages, penalties, treble damages, and equitable and injunctive relief to which the Court finds Plaintiff entitled, together with costs, interest, and attorney fees.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of the issues in this case.

Dated:  August 23, 2023					By: /s/ *Jeffrey C. Hart*
							Jeffrey C. Hart (P69217)
							Charissa Huang (P75501)
							SMITH HAUGHEY RICE & ROEGGE
							Attorneys for Plaintiff Renita Williams
							213 S. Ashley Street, Suite 400
							Ann Arbor, MI  48104
							(248) 417-7829
							jhart@shrr.com
							chuang@shrr.com