UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENITA M. WILLIAMS,

Plaintiff,

v.

EASTPOINTE COMMUNITY SCHOOLS, et al.,

Defendants.

Case No. 2:23-cv-12155

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 37), DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 38), AND DENYING DEFENDANTS' MOTION TO STRIKE AS MOOT (ECF No. 54)**

In this employment discrimination case, Plaintiff Renita Williams alleges that when she was a high school assistant principal, her then-employer Defendant Eastpointe Community Schools paid Covid-19 related bonuses to white administrators but not Black administrators like her. In response, Eastpointe Community Schools explained that only elementary and middle school principals received bonuses. On Defendants' motion for summary judgment, this Court finds that Williams offers no evidence this reason is pretextual, meaning Defendants are entitled to summary judgment on Williams' race-discrimination claims.

Williams also alleges that Defendant Christina Gibson interfered with her employment applications to other school districts. However, the sole evidence in

support of this allegation is hearsay, which is insufficient to create a question of fact. Defendants therefore are entitled to summary judgment on this claim as well, and in turn, they are entitled to judgment in their favor.

## I. BACKGROUND

Plaintiff Renita Williams, a Black woman, began working for Eastpointe Community Schools (the "District") in 2016. ECF No. 37-2 at PageID.300–02. She was an Assistant Principal of Eastpointe High School for the 2020–2021 school year. *Id.* During her employment with the District, Williams was a union member, and the terms of her employment were governed by a collective bargaining agreement. ECF No. 37-3 at PageID.351; *see also* ECF No. 51-1. Williams alleges that she was one of only three Black administrators in the district, even though the student population is approximately 90% Black. ECF No. 37-2 at PageID.320, 325.

### A. Covid Relief Grant

The core of Williams' lawsuit is the allegation that at the end of the 2020–21 school year, the District used an Elementary and Secondary School Emergency Relief Fund ("ESSER") grant to pay bonuses to all white administrators, but did not pay the same to any Black administrators.[1] *See* ECF Nos. 1 at PageID.4–5; 39-3 at PageID.1048–49.

[1] Williams also testified that she should have received a 5-year longevity bonus, but did not because of her race. ECF No. 37-2 at PageID.329. However, the longevity bonus is not mentioned in her Complaint. *See generally* ECF No. 1. Because "a

Defendants explain that several different unions cover the District's employees, based on their position type. ECF Nos. 37 at PageID.265–66; 37-3 at PageID.337–38, 350–51. Relevant here, the administrators' union treated various positions differently, separating them into five categories:

(a) High School Principal;

(b) Middle School Principals;

(c) Elementary Principals;

(d) High School Assistant Principals; and

(e) Middle School Assistant Principals.

ECF No. 51-1 at PageID.1819. All administrators worked the same instructional calendar, but the groups worked different amounts of additional administrative days—from 15 additional days for Elementary Principals at the low end to 35 days for the High School Principal at the high end. *Id.*; *see also* ECF No. 37-2 at PageID.318 (Williams testifying that her contract, as a high school administrator, required additional days of work compared to the elementary and middle school administrators).

---

plaintiff may not defeat summary judgment by asserting a claim that [s]he did not plead in the complaint," *Edison v. Twp. of Northville*, 752 F. Supp. 3d 808, 821 (E.D. Mich. 2024), this Court does not address the longevity bonus. *See also, e.g.*, *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788–89 (6th Cir. 2005) (affirming a district court's refusal to consider a new claim that was raised for the first time in opposition to summary judgment).

The ESSER Grant bonuses were paid to elementary and middle school principals. ECF No. 37-3 at PageID.350, 357; *see also* ECF No. 37-4. In the District's eyes, this compensated for the disparity between contract lengths, because the elementary school principals had to work outside of their contractual work year during the summer of 2020. ECF No. 37-3 at PageID.337, 357. The high school administrators, by contrast, had a longer contractual work year, so additional work navigating the pandemic and virtual learning did not require additional compensation. *Id.* Williams confirmed that to her knowledge, all administrators who received ESSER Grant bonuses were elementary or middle school administrators. *See* ECF No. 37-2 at PageID.333. Defendant Chrisina Gibson—the District's assistant superintendent at the time, *see* ECF Nos. 37-3 at PageID.348, 355; 37-7 at PageID.370—testified that Williams did not qualify for the bonus as an *assistant* principal for a *high* school, *see id.* at PageID.350, 357.

**B. Williams' Resignation and Subsequent Employment**

During the 2020–2021 school year, Williams had applied for multiple jobs—some at other districts, and some internal to the District. ECF No. 37-2 at PageID.303–04. Then on July 19, 2021, Williams resigned from her role, allegedly because of the ESSER Grant distribution. ECF Nos. 37-5; 1 at PageID.8, 10. Her resignation letter was quite positive and does not mention any alleged race discrimination. ECF No. 37-5; *see also* ECF No. 37-2 at PageID.316.

For the 2021–2022 school year, Williams worked as an assistant principal at Farmington Public Schools. ECF No. 37-2 at PageID.303–04, 308. Her salary and benefits were better at Farmington than Eastpointe. *Id.* at PageID.305; *see also* ECF No. 37-6. She went on to work at River Rouge for the 2022–2023 school year, where her salary increased again. ECF No. 37-2 at PageID.309–10. After one year at River Rouge, Williams took a position at Oak Park Schools as a high school principal. *Id.* at 310. Again, her salary continued to grow. *Id.*

**C. Christina Gibson**

Williams testified that many school districts use an app called Frontline to screen employment applications, and she was placing applications through this app. ECF No. 37-2 at PageID.322. She alleges that Gibson "kept tabs" on those employment applications. *See* ECF No. 1 at PageID.11. Williams further alleges that Gibson "intervene[d] in the contractual relationship[s] [Williams] was attempting to obtain." *Id.* This allegation is based on Williams' testimony that a colleague, Leah Black, heard that Gibson had used the Frontline app to investigate where Williams was applying, and that Black told Williams about Gibson's "investigating." ECF No. 37-2 at PageID.322. Williams admits she did not see Gibson using Frontline. *Id.*

Williams further alleges that Gibson "bad-mouthed" her to prospective employers, alleging that Gibson spoke to Allyson Robinson, the principal of Power

Middle School in Farmington, Michigan. ECF Nos. 38 at PageID.402–03; 37-2 at PageID.307. However, Williams did not observe this conversation or see it confirmed in writing. ECF No. 37-2 at PageID307. Rather, the whole of what Robinson allegedly told Williams was "I know Christina Gibson, and then there was a laugh behind it." *Id.* at PageID.307–08.

Gibson testified that she had access to Frontline but could only use it to view an application to work in the District. ECF No. 37-3 at PageID.339. She could not view applications to other school districts, or other applicants. *Id*. And Gibson testified that she did not "bad-mouth[]" Williams to Robinson. *Id.* at PageID.352. To the contrary, Gibson testified that she had spoken to Robinson once at a conference, but the discussion did not involve Williams. *Id.* at PageID.346–47.

**D. Procedural History**

On August 23, 2023, Williams sued the District and Gibson, bringing claims under three bases: race discrimination in violation of 42 U.S.C. § 1981 (Count I); race discrimination, retaliation, hostile work environment, and constructive discharge under 42 U.S.C. § 1983 (Count II); and race discrimination, retaliation, hostile work environment, and constructive discharge under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS § 37.2101 *et seq*. (Count III). ECF No. 1. Both parties now move for summary judgment. ECF Nos. 37; 38. This Court heard oral arguments on both motions on

September 22, 2026, *see* ECF No. 50, and will consider the motions concurrently. At the hearing, this Court directed the Parties to file supplemental exhibits within three days. The Parties did so. ECF Nos. 51, 53. Williams also filed a supplemental brief. *See* ECF No. 52. On September 25, 2026, Defendants moved to strike that brief, arguing it was improperly filed without leave because this Court directed the Parties to file exhibits, not briefs. ECF No. 54.

## II. LEGAL STANDARD

To prevail on summary judgment, a movant must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than a mere "scintilla of evidence," *id.* at 252, and more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *See Anderson*, 477 U.S. at 251–52. Summary judgment will be granted if the nonmovant fails to establish a genuine issue of material fact on the elements of its case that the moving party has challenged. *See Celotex Corp.*, 477 U.S. at 322. But summary judgment will be

denied if the challenged elements have "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).

## III. DISCUSSION

### A. Williams's Disparate Treatment Claim

Williams's primary claim is race discrimination, alleging that she and other Black administrators did not receive bonuses from the ESSER Grant at the end of the 2020–2021 school year, while white administrators did. *See* ECF No. 38 at PageID.405–11. In response, Defendants argue that Williams was not qualified to receive an ESSER Grant bonus,[2] and in any event, she did not suffer an adverse employment action, nor has she identified a similarly situated comparator. *See* ECF No. 37 at PageID.274–85. As explained below, this Court finds that Williams has not established that she suffered an adverse employment action, nor has she demonstrated pretext. Defendants are therefore entitled to summary judgment here.

All of Williams's race-discrimination claims—under § 1981, § 1983, and ELCRA—are analyzed under the same rubric. *See Thompson v. City of Lansing*, 410 F. App'x 922, 934 (6th Cir. 2011) ("[C]laims of racial discrimination brought under

---

[2] Several times throughout her briefing, Williams also claims that the District incorrectly alleges she did not receive the ESSER Grant bonus because she was not employed on the payout date. *See, e.g.*, ECF No. 39 at PageID.816–17. However, Defendants do not advance this argument in their briefing, so this Court will not address it.

§ 1981 and § 1983 are analyzed under the same standards as . . . ELCRA discrimination claims."). A plaintiff may prove a race discrimination claim using either direct or circumstantial evidence. *See Weberg v. Franks*, 229 F.3d 514, 522–23 (6th Cir. 2000). Where, as here, there is no direct evidence of discrimination,[3] Williams's circumstantial evidence is analyzed under the *McDonnell Douglas* burden shifting framework. *See id.* at 523; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703–04 (6th Cir. 2007).

Under that framework, Williams must first establish a prima facie case of racial discrimination. *See Clay*, 501 F.3d at 703. To do so, she must demonstrate that she: (1) is "a member of a protected class," (2) "suffered an adverse employment action," (3) was "qualified for the position," and (4) "that a person outside the protected class was treated more favorably" than she was. *Braithwaite v. Timkin Co.*, 258 F.3d 488, 493 (6th Cir. 2001). If Williams demonstrates a prima facie case, the burden shifts to Defendants to articulate a "legitimate, non-discriminatory reason"

[3] At argument, Williams's counsel argued at length that Dianne Haack's testimony that only white administrators received the bonus is direct evidence of discrimination. As discussed below, however, Haack's testimony is an observation of what happened. It does not, standing alone, provide direct evidence of discrimination. *See, e.g.*, *Umani v. Mich. Dep't of Corrs.*, 432 F. App'x 453, 458 (6th Cir. 2011) ("Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor.").

for the employment decision. *Id.* (citation omitted). If Defendants do so, then the burden shifts back to Williams to establish that the proffered reasons are simply pretext for discrimination. *Id.*

There is no dispute that Williams, as a Black woman, is a member of a protected class. Nor is there a dispute that she was qualified to serve as the assistant principal of Eastpointe High School. However, Williams has not established a genuine question of material fact as to whether she suffered an adverse employment action when she did not receive the ESSER Grant bonus in the summer of 2021.

An adverse employment action "is one in which an employee suffers a loss of pay or benefits, a detrimental change in responsibilities, a negative change in the terms or conditions of employment, or some other actual and unfavorable change in job status." *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 786 (6th Cir. 2024) (internal quotation marks and citation omitted). The nonpayment of a bonus is only an adverse employment action if an employee receives less than the amount to which she is entitled. *Id.*

Here, Williams asserts that she was discriminated against because she did not receive the ESSER Grant bonus at the end of the 2021 school year. *See, e.g.*, ECF No. 38 at PageID.408. However, she provides no evidence that she was entitled to that bonus. *See Milczak*, 102 F.4th at 786. The evidence presented by

Defendants—through Gibson's testimony[4]—is that Williams was not qualified to receive the bonus, since she was not an elementary or middle school principal. *See* ECF No. 37-3 at PageID.337, 350, 357. Rather than challenge Defendants' explanation, Williams's testimony confirms the salient points: she testified that all individuals that received ESSER Grant bonuses were elementary or middle school administrators, ECF No. 37-2 at PageID.333, and that high school administrators' contracts required additional work days compared to the elementary and middle school administrators, *id.* at PageID.318.

Williams offers nothing to challenge Defendants' evidence showing she was not entitled to the ESSER Grant bonus, meaning there is no question of material fact here. In other words, Williams has not shown that she did not receive a bonus to which she was entitled, meaning she has not proven that she suffered an adverse

[4] Defendants' proofs leave something to be desired. Defendants claim the ESSER Grant distribution was based on the unions' collective bargaining agreements, but they attach a list of the individuals that received the ESSER Grant rather than any evidence explaining the decision. ECF No. 37-4. However, Defendants have provided the collective bargaining agreement showing that the various administrators *were* treated differently based on their category. *See* ECF No. 51-1 at PageID.1819. And Gibson testified that only certain categories of administrators received the bonuses. *See* ECF No. 37-3 at PageID.337, 357. This Court cannot make a credibility determination on summary judgment, *see Anderson*, 477 U.S. at 255, and therefore declines Williams's invitation to discount Gibson's testimony, *see* ECF No. 39 at PageID.816.

employment action. *See Milczak*, 102 F.4th at 786. In turn, she has not established a prima facie case of discrimination.[5] *See Braithwaite*, 258 F.3d at 493.

For the same reasons, even assuming Williams could establish a prima facie case, she has not marshaled any evidence that the District's proffered explanation—that only elementary and middle school principals received the ESSER Grant bonus—is pretextual. A plaintiff usually shows pretext in one of three ways: by presenting evidence "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co*., 580 F.3d 394, 400 (6th Cir. 2009). Put slightly differently, to carry her burden, Williams "must produce sufficient evidence from which a jury could reasonably reject [the District]'s explanation of why" she did not receive a bonus. *Id.*

Williams has offered nothing of the sort. She does not argue, let alone offer evidence that would prove, that the District's explanation had no basis in fact. To

[5] Williams has also not identified any similarly situated comparators, such as a white high school assistant principal that received the ESSER Grant bonus. At argument, Williams noted that a comparator need only be similar in all "relevant" respects, not necessarily identically situated. *See, e.g.*, *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). But given the fact that Williams was required, by contract, to work a longer year than the elementary and middle school administrators, *see* ECF Nos. 37-2 at PageID.318; 51-1 at PageID.1819, this Court finds the elementary and middle school administrators are not similarly situated in all relevant respects, *see, e.g.*, *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 537 (6th Cir. 2011) (holding that the plaintiff "failed to show that she is similarly situated to the employees whose contracts were different").

the contrary, she admits that only elementary and middle school employees received the ESSER Grant bonus. ECF No. 37-2 at PageID.333. She does not offer any evidence that shows the District's explanation did not actually motivate the bonus distribution. Nor does she show that the explanation was insufficient to motivate the bonus distribution.

Rather, Williams argues that Gibson's use of the N-word in 2023 is evidence of racial animus. *See, e.g.*, ECF Nos. 39 at PageID.820; 37-3 at PageID.351–52. Critically, though, Williams offers no evidence that Gibson used the slur in relation to the ESSER Grant—nor could she, given the time disparity—or evidence that Gibson directed the slur at her. *Cf.* ECF No. 37-3 at PageID.351–52. While Gibson's choice to use the N-word in conversation at work is inappropriate and offensive, there is nothing connecting it to the ESSER Grant awarded two years prior, and this Court finds it is insufficient, standing alone, to establish pretext. *See, e.g.*, *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 528 (6th Cir. 2012) (holding that discriminatory remarks that are not temporally proximate to the adverse employment decision are insufficient to establish a question of fact as to pretext).

Of course, throughout her briefing, Williams maintains that the fact that no Black administrators received this bonus[6] renders it discriminatory. *See, e.g.*,

[6] Defendants highlight that in 2022, a Black administrator received an ESSER Grant bonus, which disproves Williams' claims. *See* ECF Nos. 37 at PageID.276; 37-3 at

ECF No. 39 at PageID.822–23 (citing testimony from Dianne Haack that only white administrators received the ESSER Grant). This is not persuasive for two reasons. First, the observation that the District's actions were arguably discriminatory says nothing of whether the proffered reason for the discrimination is pretextual. Put slightly differently, Haack's testimony addresses *what* happened, not *why* it happened. At the pretext stage, this Court is concerned with *why*; more evidence of *what* does not move the ball on *why*.

And second, a statement in briefing, unsupported by any evidence, says nothing about whether the explanation is pretextual. *See, e.g.*, *Clay*, 501 F.3d at 703–04 ("An articulation not admitted into evidence will not suffice. Thus, the [party] cannot meet [her] burden merely through an answer to the complaint or by argument of counsel" (citation omitted)). Williams cannot establish pretext simply by returning to the allegation of discrimination. *See, e.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) ("[T]he plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a race discrimination claim to withstand a motion for summary judgment.").

At bottom, Williams has not presented any evidence from which a reasonable factfinder could doubt that the ESSER Grant was distributed only to elementary and

---

PageID.351, 354. However, this Court finds the distribution of grants in 2022 irrelevant to the distribution of grants in 2021.

middle school principals. Because Williams has not raised a question of fact as to whether Defendants' reasoning was legitimate, Defendants are entitled to summary judgment on Williams' disparate treatment claims. *See, e.g.*, *Chen*, 580 F.3d at 402.

**B. Williams's Remaining Claims**

Williams also brings retaliation, hostile work environment, and constructive discharge claims, as well as a *Monell* claim against the District. ECF No. 1 at PageID.7–13.

*1. Retaliation*

Williams alleges that Gibson retaliated against her by sabotaging her employment applications to other school districts. *See* ECF No. 38 at PageID.412–14. Gibson responds persuasively with two points: that Williams' claims fail under the same *McDonnell Douglas* burden-shifting framework—requiring dismissal for the reasons just discussed—and her evidence is solely hearsay, which is insufficient to establish a question of fact. ECF No. 37 at PageID.280–82.

First, Gibson is correct that a retaliation claim based on circumstantial evidence is analyzed under the same *McDonnell Douglas* burden-shifting framework as a disparate treatment claim. *See Chen*, 580 F.3d at 402. Therefore, to the extent Williams's retaliation claim is based on the nonpayment of the bonus, Williams' failure to establish a prima facie case of discrimination or establish pretext on that claim renders her retaliation claim meritless as well. *See id.*

Second, Williams has presented no admissible evidence of any retaliation on Gibson's part. In her deposition, Williams testified that Allyson Reynolds, an employee in the Farmington school district, informed Williams that she knew Gibson. ECF No. 37-2 at PageID.307–08. Not only is this vague, it is classic hearsay evidence—Williams reporting Reynolds' statements. *See* FED. R. EVID. 801. If Reynolds was deposed in this matter, her deposition was not provided to this Court. That leaves solely Williams' hearsay, which "may not be considered on summary judgment." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999); *see also* FED. R. EVID. 802 ("Hearsay is [generally] not admissible.").

Williams also testified that a different colleague, Leah Black, told her that Gibson had spoken to Reynolds. ECF No. 37-2 at PageID.322. This is hearsay within hearsay: Williams recounting Black's statement recounting Reynolds's statement. *See* FED. R. EVID. 805. Such "double hearsay" must be admissible at each level. *See id.*; *see also Back v. Nestle USA, Inc.*, 694 F.3d 571, 578 (6th Cir. 2012) ("For double-hearsay statements to be admissible, each separate statement must either be excluded from the hearsay definition or fall within a hearsay exception."). Williams offers no justification for admissibility at all, so this statement is doubly improper at summary judgment. *See Jacklyn*, 176 F.3d at 927.

That leaves only two pieces of evidence on this point: (1) Gibson's testimony

that she could not view employment applications on Frontline, and she did not "sabotage" any of Williams's employment opportunities, ECF No. 37-3 at PageID.339, 352; and (2) Williams's testimony that she has no proof that Gibson reached out to anyone at any of the school districts to which she applied, ECF No. 37-2 at PageID.307, 309, 322. On this record, there is no evidence supporting Reynolds' retaliation claim, so Defendants are entitled to summary judgment.

*2. Hostile Work Environment*

Williams also claims she was subjected to a hostile work environment based on the nonpayment of the ESSER Grant bonus. ECF No. 38 at PageID.410–14. Defendants respond that an isolated incident cannot establish a hostile work environment. *See* ECF No. 42 at PageID.1422–23. This Court finds that the nonpayment of the ESSER Grant bonus is insufficient, standing alone, to establish a hostile work environment.

To prevail on a hostile work environment claim, a plaintiff must show (1) membership in a protected class; (2) she was subject to harassment; (3) the harassment was based on her membership in the protected class; (4) "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment;" and (5) "the defendant knew or should have

known about the harassment and failed to act." *Johnson v. Ford Motor Co.*, 13 F.4th 493, 503 (6th Cir. 2021) (citation omitted).

As the Sixth Circuit has made clear, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 512 (6th Cir. 2011) (internal quotation marks and citation omitted). Examples of sufficiently severe isolated incidents that will sustain a hostile work environment claim involve physical invasion or use of the N-word directed at the plaintiff. *See, e.g.*, *Ault v. Oberlin Coll.*, 620 F. App'x 395, 403 (6th Cir. 2015) (finding that a supervisor physically harassing a plaintiff was severe); *Smith v. P.A.M. Transp., Inc.*, 154 F.4th 375, 392 (6th Cir. 2025) ("[U]se of an egregious racial slur like the n-word may be so severe as to constitute a hostile work environment.") (internal quotation marks and citation omitted)); *but see CSX Transp.*, 643 F.3d at 512 (holding that "[o]ccasional offensive utterances do not rise to the level required to create a hostile work environment," especially when not directed at the plaintiff).

This Court finds that the non-payment of the ESSER Grant bonus, alone, is insufficient to establish a hostile work environment. *See CSX Transp.*, 643 F.3d at 512. And to the extent Williams relies on the *list* of possible witnesses who will "support her claims of hostile work environment," *see* ECF No. 38 at PageID.404, that is insufficient. A list of possible witnesses is not, in and of itself, evidence of a

hostile work environment. If Williams wanted to collect and present evidence from these witnesses, she had the opportunity during discovery to do so, but she apparently did not. That leaves no admissible evidence of a hostile work environment, and Defendants are entitled to summary judgment on this claim.

*3. Constructive Discharge*

Williams's next claim is that she was constructively discharged due to the racial discrimination she experienced in the District. ECF No. 38 at PageID.411. Defendants respond by arguing that Williams's constructive discharge claim fails without evidence of a hostile work environment, and that Williams's resignation was voluntary as evidenced by her "glowing" letter of resignation. ECF No. 37 at PageID.283–85.

Defendants are correct that the "[c]reation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case." *Pa. State Police v. Suders*, 542 U.S. 129, 149 (2004). If a plaintiff's allegations do not rise to the level of establishing a hostile work environment, "they necessarily do not rise to the level of compelling a reasonable person to resign." *Plautz v. Potter*, 156 F. App'x 812, 819 (6th Cir. 2005) (per curiam). Having found that Williams has not established a hostile work environment, she has not established the necessary elements of constructive discharge. *See id.* Therefore, Defendants are entitled to summary judgment on this claim as well.

*4.* Monell *Liability*

Finally, Williams seeks to impose liability on the District itself. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Having found that Williams has not established a violation of her constitutional rights, no municipal liability may attach.[7] *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Accordingly, the District is entitled to summary judgment on this claim as well. *See id.*

In sum, Williams has not established disputes of fact regarding her claims, so summary judgment will be granted in Defendants' favor. As a result, Defendants' motion to strike Williams's supplemental brief will be denied as moot. *See Wilburn v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 771 F. Supp. 3d 950, 962 (E.D. Mich. 2025) (denying pending motion as moot after having found that the complaint would be dismissed in full).

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 38, is **DENIED**.

[7] This Court recognizes that municipal liability may attach "even if no individual [defendant] violated the Constitution." *Grote v. Kenton Cnty.*, 85 F.4th 397, 414 (6th Cir. 2023). However, Williams must still suffer a constitutional injury. *See generally Monell*, 436 U.S. at 690–91. Having failed to prove any of her race discrimination claims and failed to allege some separate injury inflicted by the District, Williams' *Monell* claim necessarily fails. *See Heller*, 475 U.S. at 799.

It is further **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 37, is **GRANTED**.

It is further **ORDERED** that Defendants' Motion to Strike, ECF No. 54, is **DENIED AS MOOT.**

Judgment will be entered in Defendants' favor.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 30, 2026